## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ANDREW CYRIL SMITH, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-686-M-BH |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| **Defendant.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order No. 3-251*, this case was automatically referred for findings, conclusions, and recommendation. Before the Court is the plaintiff's *Petition to Obtain Approval of a Fee for Representing a Social Security Claimant*, filed December 1, 2016 (doc. 24). Based on the relevant filings and applicable law, the petition should be **GRANTED**.

### I. BACKGROUND

On March 2, 2015, Andrew Cyril Smith (Plaintiff) filed a complaint seeking reversal and remand of the Acting Commissioner[1] of Social Security's (Commissioner) decision denying his claims for social security income and disability insurance benefits under the Social Security Act. (Doc. 1.) On July 29, 2015, the Court granted the Commissioner's unopposed motion to remand this case for further administrative proceedings. (Docs. 16-17.) Plaintiff then moved for, and was awarded, attorney's fees under the Equal Access to Justice Act (EAJA) in the amount of $5,136.68. (Docs. 20, 23.)

On remand, the Commissioner rendered a decision in favor of Plaintiff and awarded past-due

---

[1] At the time of filing of this case, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration, but she was succeeded by Nancy A. Berryhill beginning January 20, 2017.

benefits.  (Docs. 24 at 2-3, 24-1 at 5-19.)[2]  As provided by a contingency fee agreement, Plaintiff

now seeks approval under § 406(b) of the Social Security Act to pay his attorney fees in the total

amount of $20,898.68,[3] which represents 25% of the past-due benefits he received.[4]  (Docs. 24 at

3, 24-1 at 21-26.) After a timely-filed response by the Commissioner (doc. 26), the motion is now

ripe for recommendation.

## II. ANALYSIS

"Sections 406(a) and 406(b) of the Social Security Act provide for the discretionary award

of attorney's fees out of the past-due benefits recovered by a successful claimant in a Social Security

action." *Murkeldove v. Astrue*, 635 F.3d 784, 787 (5th Cir. 2011).  While § 406(a) governs the

award of attorney's fees for representing a claimant in administrative proceedings, § 406(b) governs

the award of attorney's fees for representing a claimant in court.  *Gisbrecht v. Barnhart*, 535 U.S.

789, 794 (2002). Section 406(b) provides:

> Whenever a court renders a judgment favorable to a claimant under this subchapter
> who was represented before the court by an attorney, the court may determine and
> allow as part of its judgment a reasonable fee for such representation, not in excess
> of 25 percent of the total of the past-due benefits to which the claimant is entitled by
> reason of such judgment.

42 U.S.C. § 406(b)(1)(A); *see also Murkeldove*, 635 F.3d at 788 (citing *Gisbrecht*, 535 U.S. at 800).

Contingency fee agreements in social security cases are unenforceable to the extent that they provide

for fees exceeding 25% of past-due benefits.  *Gisbrecht*, 535 U.S. at 807.  Even when contingency

---

[2]  Citations to the record refer to the CM/ECF system page number at the top of each page.

[3]  On the third page of his petition, Plaintiff's attorney asks for $29,898.68 in attorney's fees.  He asks for $20,898.68 in the rest of his petition, and $29,898.68 is more than 25% of the past-due benefits owed.  (Doc. 24 at 3, 7-10.)

[4]  This total includes 25% of Plaintiff's past-due social security and child benefits. (Doc. 24-1 at 22, 26.)

fee agreements are within the statutory ceiling, "§ 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *See Gisbrecht*, 535 U.S. at 807.[5]

The reasonableness of attorney's fees awarded pursuant to a fee-shifting statute is generally determined by using the lodestar method.[6] *Jeter v. Astrue*, 622 F.3d 371, 378 n.1 (5th Cir. 2010) (citing *Gisbrecht*, 535 U.S. at 801). Noting that § 406(b) is not a fee-shifting statute, however, the Supreme Court has explicitly rejected the use of the lodestar method as the starting point in determining the reasonableness of a fee under this statute. *See Gisbrecht*, 535 U.S. at 801. Instead, "lower courts [are] to give the contingency fee agreement 'primacy'", although this will "in some instances result in an excessively high fee award." *Jeter*, 622 F.3d at 379. *Gisbrecht* acknowledged that "[i]f the benefits [resulting from a contingency fee agreement] are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order [to disallow windfalls for lawyers]." *Gisbrecht*, 535 U.S. at 808. The Fifth Circuit has interpreted this language to mean that courts may still employ the lodestar method in determining whether a contingency fee constitutes a windfall, but only if they "articulate additional factors demonstrating that the excessively high fee would result in an unearned advantage." *Jeter*, 622 F.3d at 380. For instance, a court may consider a reasonable hourly rate in its "windfall" assessment, "so long as this

---

[5] The Commissioner has declined to assert a position on the reasonableness of Plaintiff's fee request on grounds that she "is not the true party in interest[,]" and she instead asks the Court to resolve the question of reasonableness. (Doc. 26 at 1-3.) As the Fifth Circuit has noted, the Commissioner has no direct financial stake in the fee determination; rather, her role resembles that of a "trustee" for the claimant. *Jeter v. Astrue*, 622 F.3d 371, 374 n.1 (5th Cir. 2010) (citing *Gisbrecht*, 535 U.S. at 798 n.6). Questioning the reasonableness of the fees sought appears consistent with this role.

[6] This method consists of multiplying a reasonable number of hours by a reasonable hourly rate. *Raspanti v. Caldera*, 34 F. App'x 151 (5th Cir. 2002); *Sandoval v. Apfel*, 86 F. Supp. 2d 601, 615-16 (N.D. Tex. 2000) (citations omitted).

mathematical calculation is accompanied by consideration of whether an attorney's success is attributable to his own work or instead to some unearned advantage for which it would not be reasonable to compensate him." *Id.*

The Fifth Circuit has not prescribed an exhaustive list of factors to consider in determining whether a fee award is unearned. It has noted with approval several factors considered by lower courts, including "risk of loss in the representation, experience of the attorney, percentage of the past-due benefits the fee constitutes, value of the case to a claimant, degree of difficulty, and whether the client consents to the requested fee." *Id.* at 382 (citing *Brannen v. Barnhart*, No. l:99-CV-325, 2004 WL 1737443, at *5 (E.D. Tex. July 22, 2004)). The claimant's attorney bears the burden of persuasion on the reasonableness of the fees sought. *See Gisbrecht*, 535 U.S. at 807 n.17.

With regard to the first factor, courts have consistently recognized that "there is a substantial risk of loss in civil actions for social security disability benefits." *Charlton v. Astrue*, No. 3:10-CV-056-O-BH, 2011 WL 6325905, at *4 (N.D. Tex. Nov. 22, 2011) (noting that on average only 35 percent of claimants who appealed their case to federal court received benefits), *adopted*, 2011 WL 6288029 (N.D. Tex. Dec. 14, 2011); *see also Hartz v. Astrue*, No. 08-4566, 2012 WL 4471846, at *6 (E.D. La. Sept. 12, 2012) (collecting cases), *adopted*, 2012 WL 4471813 (E.D. La. Sept. 27, 2012). Here, counsel faced a substantial risk of loss, as Plaintiff had lost at all levels of the administrative proceedings. (*See* doc. 15.)

Counsel's resulting hourly rate of $771.16[7] is slightly more than two times his regular hourly

---

[7] Counsel's hourly rate was determined by dividing the amount sought of $20,898.68 by the 27.10 hours of attorney work devoted to the appeal of this case. (*See* doc. 24 at 7-11.)

4

rate of $375.[8] (*See* doc. 24 at 3, 7.)  This falls below the amounts that have been approved by courts as reasonable.  *See, e.g., Sabourin v. Colvin*, No. 3:11-CV-2109-M, 2014 WL 3949506, at *1-2 (N.D. Tex. Aug. 12, 2014) (finding that the "de facto hourly rate of $1,245.55 per hour" did not constitute an unearned windfall but fair compensation for attorney's fees under § 406(b)); *Prude v. U.S. Comm'r, Soc. Sec. Admin.*, No. 11-CV-1266, 2014 WL 249033, at *2 (W.D. La. Jan. 22, 2014) (finding that the resulting hourly fee of $937.50 was reasonable in light of factors "such as the few attorneys in the area who will handle a disability appeal," "the lack of compensation in the many unsuccessful cases," and the fact that the fee was "not attributable to anything other than the attorney's own work").  Even in cases where courts found a fee reduction was warranted, they "reduced the fee to 2.5 times the rate normally charged by the attorney." *Jeter v. Comm'r, Soc. Sec.*, No. 2:06-CV-81, 2009 WL 909257, at *6 (W.D. La. Apr. 3, 2009) (collecting cases).  The resulting hourly rate requested here, therefore, seems reasonable.

Moreover, counsel provided effective and efficient representation, expending over 27 hours drafting a 19-page appellate brief that identified several critical arguments from a 904-page administrative record.  (*See* docs. 11-12, 15.)  Given the multiple denials at the administrative level, the attorney's success in both the appeal and subsequent administrative hearing appears to be attributable to his own work.  By the time counsel represented Plaintiff in federal court, he had over 40 years of experience practicing exclusively in Social Security law.  (Doc. 24 at 13-15.)  The contingency fee requested in this case represents exactly 25% of the past-due benefits awarded to Plaintiff.  (*See* docs. 24 at 3; 24-1 at 2-3.)  Finally, while certainly not determinative, the existence

---

[8] Plaintiff's counsel submitted evidence showing that the median average hourly rate for equity partners in Texas was $388 in 2012.  (*See* docs. 24 at 6, 24-1 at 1.)

of a contingency fee agreement indicates that Plaintiff consented to the payment of a 25% fee.  *See Jeter*, 622 F.3d at 381–82; *see also Hartz*, 2012 WL 4471846, at *6.

After weighing the relevant factors, the Court finds that the requested contingency fee award in the amount of $20,898.68 is reasonable and should be granted.[9]

### III.  RECOMMENDATION

Plaintiff's *Petition to Obtain Approval of a Fee for Representing a Social Security Claimant*, filed December 1, 2016 (doc. 24), should be **GRANTED**.  Counsel should be awarded $20,898.68 in attorney's fees out of Plaintiff's past-due benefits pursuant to 42 U.S.C. § 406(b).

**SO RECOMMENDED** on this 6th day of April, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[9] As noted, Plaintiff's counsel was previously awarded fees pursuant to EAJA.  (Doc. 23.)  Ordinarily, counsel would be required to "refund to [Plaintiff] the amount of the smaller fee."  *Gisbrecht*, 535 U.S. at 796.  Here, counsel represents that he did not receive the EAJA fee because the Department of Treasury applied the fee award to satisfy an outstanding federal debt owed by Plaintiff.  (*See* docs. 24 at 10; 24-1 at 4.)

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

7